UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL DONALDSON,

          Petitioner,

v.                                                    Case No. 13-13975

JOE BARRETT,                                          Honorable Patrick J. Duggan

          Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY,
## BUT GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

### I.  INTRODUCTION

Pending before the Court is petitioner Carl Donaldson's *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his plea-based conviction for a drug offense.  Petitioner alleges that his guilty plea was involuntary, unknowing, and based on an illusory agreement and that his sentence should have run concurrently with another sentence.  Respondent Joe Barrett urges the Court to deny the petition.  Having reviewed the pleadings and record, the Court concludes that Petitioner's claims lack merit and do not warrant habeas relief.  Accordingly, for the reasons that follow, the petition will be denied.

### II.  PROCEDURAL BACKGROUND

#### A.  The State Court Proceedings

Petitioner was charged in Oakland County, Michigan with possession of less than twenty-five grams of a controlled substance, Mich. Comp. Laws § 333.7403(2)(a)(v).  On October 28, 2011, Petitioner pleaded guilty to the charge in Oakland County Circuit Court.  As a factual basis for his plea, Petitioner stated that, on January 13, 2011, he had 25 grams of Oxycodone in his pocket.  He admitted to the trial judge that he did not have a prescription for the drug and that he knew the substance in his pocket was Oxycodone.  In exchange for the guilty plea, the parties and the trial court agreed that Petitioner would be sentenced within the state sentencing guidelines, as calculated by the trial court at sentencing.[1]  (Plea Hr'g, 6, 13, Oct. 28, 2011.)

---

[1]  This type of agreement is known as a *Cobbs* agreement.  *See People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993).  In *Cobbs*, the Michigan Supreme Court recognized the following manner in which judges may participate in sentence discussions during plea negotiations:

> At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.
>
> . . . .
>
> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources.  However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Id.* at 283, 505 N.W.2d at 212 (footnote and emphasis omitted).

2

On November 18, 2011, the state sentencing guidelines for Petitioner's minimum sentence were calculated at two to thirty-four months.  The trial court then sentenced Petitioner as a habitual offender to a minimum term of thirty-four months (two years, ten months) in prison and a maximum term of fifteen years in prison.  The sentence was ordered to run consecutively to the sentence that Petitioner was serving as a parolee when he possessed the Oxycodone.  (Sentencing Tr., 5, 7, Nov. 18, 2011.)

Petitioner subsequently moved to withdraw his guilty plea on the grounds that his guilty plea was not knowing or voluntary and that the *Cobbs* agreement was illusory because he gained no real benefit from pleading guilty.  The State argued in an answer to the motion that Petitioner's plea was knowing, voluntary, and valid.  The trial court denied Petitioner's motion for the reasons given by the State.  (Mot. Hr'g, 3, Apr. 2, 2012.)

In an application for leave to appeal, Petitioner argued that the trial court abused its discretion when it denied his motion to withdraw his guilty plea, because the plea was unknowing, involuntary, invalid, and based on an illusory promise.  The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  *People v. Donaldson*, No. 309696 (Mich. Ct. App. June 20, 2012).  Petitioner raised the same issues in the Michigan Supreme Court, which denied leave to appeal on November 20, 2012, because it was not persuaded to review the issues.  *See People v. Donaldson*, 493 Mich. 896, 822 N.W.2d 767 (2012) (table).

## B.  The Habeas Petition and Answer to the Petition

On September 17, 2013, Petitioner filed his habeas corpus petition.  The Court

3

understands the first claim to allege that Petitioner's guilty plea was neither knowing, nor voluntary, that the *Cobbs* agreement was illusory, and that defense counsel's failure to properly advise Petitioner of the consequences of his plea constituted ineffective assistance of counsel. The second habeas claim appears to allege that the trial court deprived Petitioner of due process of law by sentencing him at the top end of the sentencing guidelines and by leading him to believe that his sentence would run concurrently with the sentence that he was serving when he committed the crime.

Respondent argues in an answer to the petition filed through counsel that Petitioner did not exhaust state remedies for his second claim, as required by 28 U.S.C. § 2254(b)(1). Petitioner replies that he did exhaust state remedies for his claims.

The Court need not resolve the exhaustion issue because Petitioner's claims lack substantive merit, and the exhaustion requirement is not jurisdictional. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989). Federal courts may deny a habeas petition on the merits despite a petitioner's failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(2). The Court therefore excuses the alleged failure to exhaust state remedies and proceeds directly to the merits of Petitioner's claims.

### III. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's

4

application for the writ of habeas corpus unless the state court's adjudication of the prisoner's

claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an
>          unreasonable application of, clearly established Federal law, as
>          determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented in
>          the State court proceeding.

28 U.S.C. § 2254(d).  While some federal judges find the limitations of § 2254(d) too

confining, all federal judges must obey the provision of law.  *White v. Woodall*, __ U.S. __,

134 S. Ct. 1697, 1701 (2014).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause [of §
> 2254(d)(1)], a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts of the prisoner's
> case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J.,

opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id*. at 411, 120 S. Ct. at 1522.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 2066 n.7 (1997), and

'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

## IV.  ANALYSIS

### A.  The Voluntary and Knowing Nature of the Guilty Plea

Petitioner alleges that his guilty plea was not knowing or voluntary because he relied on his trial attorney's faulty advice that he would receive a sentence in the middle or low end of the sentencing guidelines range. Petitioner claims that he had no idea he would receive a sentence at the very top of the sentencing guidelines.

### 1.  Clearly Established Federal Law

Because a guilty plea "involves a waiver of many substantial constitutional rights," *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008), it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). The

defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). "[T]he defendant must [also] be aware of the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

"[A] plea that is not voluntary is undoubtedly an impairment of a defendant's substantial rights." *United States v. Martin*, 668 F.3d 787, 792 (6th Cir. 2012). The Constitution, however, "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630, 122 S. Ct. 2450, 2456 (2002). Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Brady*, 397 U.S. at 749, 90 S.Ct. at 1469.

## 2. Application

Petitioner alleges that his guilty plea was involuntary and unknowing because his trial attorney failed to properly advise him of the consequences of his plea. He claims that, based on his attorney's advice, he anticipated a sentence at the low end or middle range of the guidelines and, instead, received a sentence at the top of the guidelines range.

The sentencing guidelines called for a minimum sentence of two to thirty-four months. (Sentence Tr., 5, Nov. 18, 2011.) Although defense counsel requested a minimum sentence of twelve months (*id.*), there is no support in the record for the contention that Petitioner was

7

promised a sentence at the low end or middle range of the sentencing guidelines.  Even if
defense counsel erroneously speculated that the trial court would sentence Petitioner at the
low end or middle range of the guidelines, the trial court correctly explained to Petitioner that
the only agreement was a sentence within the sentencing guidelines range, as calculated by
the court at sentencing. (Plea Tr., 6-7, Oct. 28, 2011.)  "[T]he state trial court's proper
colloquy can be said to have cured any misunderstanding [Petitioner] may have had about
the consequences of his plea." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).  The
possibility that Petitioner's plea was influenced by an erroneous assessment of the sentencing
consequences did not render his plea invalid. *United States v. Broce*, 488 U.S. 563, 572, 109
S. Ct. 757, 763 (1989); *accord Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975)
(stating that "[a] plea is not rendered involuntary merely because a prediction that a guilty
plea will result in a light sentence does not come true"); *United States v. Ford*, 15 F. App'x
303, 308 (6th Cir. 2001) (stating that "a plea bargain based upon the hope of a more lenient
sentence is not inherently unfair" and that "[u]nfulfilled subjective expectations of counsel
and a defendant regarding the possible length of sentence do not render an otherwise valid
plea involuntary").

There are other indications that the guilty plea was voluntary and intelligent.  For
example, the trial court informed Petitioner of the rights that he was waiving by pleading
guilty and the maximum sentence that he could receive if he pleaded guilty.  Petitioner,
moreover, stated that he was satisfied with his attorney's advice, that no one had promised
him anything other than what was stated on the record, and that it was his choice to plead

8

guilty. (Plea Hr'g, 6, 9-13, Oct. 28, 2011.) These "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977), particularly in this case where Petitioner was thirty-three years old and had experience with the criminal justice system due to several prior convictions.

To summarize, Petitioner was aware of the relevant circumstances and likely consequences of his plea. He was informed of the *Cobbs* agreement, the rights that he was waiving, and the maximum penalty for his crime. He stated that he understood these aspects of his plea and the fact that he would have one or more convictions as a result of his plea. He also provided a factual basis for his plea, and he stated that it was his choice to plead guilty.

"[I]t is well settled that post-sentencing 'buyer's remorse' is not a valid basis on which to dissolve a plea agreement and 'the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea.'" *Moreno-Espada v. United States*, 666 F.3d 60, 67 (1st Cir. 2012) (quoting *United States v. Mercedes Mercedes*, 428 F.3d 355, 359 (1st Cir. 2005) (quoting *United States v. Torres-Rosa*, 209 F.3d 4, 9 (1st Cir. 2000)). Petitioner's "failure to receive the sentence he preferred does not make his plea involuntary when he knew that the sentence he received was a possible outcome of his plea." *Meek v. Bergh*, 526 F. App'x 530, 535 (6th Cir.), *cert. denied*, 134 S. Ct. 650 (2013). The Court therefore concludes that Petitioner's plea was voluntary and intelligent.

## B.  Trial Counsel

To the extent Petitioner raises an independent claim about his trial attorney, he must show that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687, 104  S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  In the context of a guilty plea, a deficient performance is one that fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases.  *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S. Ct. 366, 369 (1985).

The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id*. at 59, 106 S. Ct. at 370.  To satisfy this requirement, Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*.

Petitioner alleges that his attorney gave him faulty advice about the sentence he was likely to receive.  A defense attorney's complete ignorance of the relevant law and consequent gross misadvice regarding a client's potential prison sentence falls below an objective standard of reasonableness.  *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001).  But mere misinformation or an inaccurate prediction regarding the scoring of sentencing guidelines, without more, does not amount to ineffective assistance.  *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993); *United States v. Arvanitis*,  902 F.2d 489, 494

10

(7th Cir. 1990).

Even if the Court were to assume that defense counsel's performance was deficient, Petitioner has not alleged that, with proper advice, he would not have pleaded guilty and would have elected to go to trial. Instead, he seeks a more favorable sentence. He wants a sentence that is in the low or middle range of the sentencing guidelines and that runs concurrently with the sentence he was serving when he committed the crime at issue here. *See* Reply to Resp't's Answer, ECF No. 10, at 8. Thus, he has failed to prove the prejudice prong of the *Strickland* test and is not entitled to habeas relief on the basis of his claim about trial counsel.

### C.  Whether the Plea was Illusory

Petitioner appears to believe that the *Cobbs* agreement was illusory because he received no benefit from it. However, the obvious benefit to pleading guilty was that Petitioner was assured a sentence within the sentencing guidelines. Without the *Cobbs* agreement, the trial court would have been free to exceed the sentencing guidelines range if it had "a substantial and compelling reason" for doing so. Mich. Comp. Laws § 769.34(3). And the trial court could have based a departure from the guidelines on a characteristic already taken into account in determining the appropriate sentence range if the characteristic was given "inadequate or disproportionate weight." Mich. Comp. Laws §769.34(3)(b).

Petitioner's criminal history included ten felony convictions and three prior misdemeanor convictions, and he was on parole for a bank robbery when he committed the

offense for which he was being sentenced. (Sentencing Tr., 6, Nov. 18, 2011.) The trial court could have concluded from these facts that the offense or offender characteristics taken into account when determining the appropriate sentence range were given inadequate weight and that an upward departure from the guidelines was appropriate. The *Cobbs* agreement therefore was not illusory.

### D.  The Sentence

Petitioner claims that the trial court deprived him of due process by misleading him about the consecutive nature of his sentence and by ruling that his sentence would run consecutively to the sentence that he was serving as a parolee for a prior conviction. The record does not support the contention that Petitioner was promised a concurrent sentence. Furthermore, the computation of a prison term "involves a matter of state law that is not cognizable under 28 U.S.C. § 2254." *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003); *see also Harrison v. Parke*, 917 F.2d 1304, No. 89-6495, 1990 WL 170428, at *2 (6th Cir. Nov. 6, 1990) (unpublished decision stating that, because it is a matter of substantive state law whether the petitioner's sentences should run concurrently or consecutively, the district court did not err in ruling that the petitioner's challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding).

Even if Petitioner's claim were cognizable on habeas review, consecutive sentences may be imposed in Michigan when specifically authorized by statute. *People v. Stead*, 270 Mich. App. 550, 551 716 N.W.2d 324, 325 (2006). Mich. Comp. Laws § 768.7a(2) provides

12

that, "[i]f a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense." Because Petitioner was on parole when he possessed Oxycodone, the trial court was required to sentence Petitioner to a consecutive sentence.   Ordering the two sentences to run consecutively did not deprive Petitioner of due process.

Although Petitioner also asserts that the trial court deprived him of due process by sentencing him at the top of the sentencing guidelines, the duration or severity of a sentence that is within statutory limits generally is not a basis for habeas corpus relief. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948).  So long as a sentence remains within the statutory limits as it was here, "trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'"  *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S. Ct. 1079, 1082 (1949)).  The Court therefore declines to grant relief on the basis of Petitioner's challenge to the duration or severity of his sentence.

## V.  CONCLUSION

The state appellate court's rejection of Petitioner's claims for "lack of merit" was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, and or an unreasonable determination of the facts.  Even where AEDPA deference

13

does not apply because the state courts did not adjudicate all of Petitioner's claims on the merits, the claims lack merit under a *de novo* standard of review.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Additionally, reasonable jurists would not disagree with this Court's resolution of Petitioner's claims, nor conclude the issues presented deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003).

**IT IS FURTHER ORDERED** that, if Petitioner chooses to appeal this decision, he may proceed *in forma pauperis* on appeal because he was granted leave to proceed *in forma pauperis* in the District Court. 24 Fed. R. App. P. 24(a)(3).

s/PATRICK J. DUGGAN
UNITED STATE DISTRICT JUDGE

Dated: August 1, 2014

Copies to:     Carl Donaldson, #300603
                Cooper Street Correctional Facility
                3100 Cooper Street
                Jackson, MI  49201

14

David H. Goodkin,  A.A.G.